**VEATCH et al. v. WAGNER.**

No. 6627–A.

District Court, Alaska
First Division, Juneau.

Dec. 18, 1953.

Warren C. Christianson, Sitka, Alaska, for plaintiffs.

Robert Boochever (of Faulkner, Banfield & Boochever,) Juneau, Alaska, for defendant.

FOLTA, District Judge.

The first phase of this litigation was dealt with in 109 F.Supp. 537, which should be consulted for a better understanding of the controversy.

Plaintiffs seek injunctive relief and damages for loss of advertising, subscriptions, good will and profits and further seek to recover upon the theory of unjust enrichment.

In June, 1951, the defendant began to broadcast Associated Press news verbatim from the plaintiffs' newspaper, which he asserts was done pursuant to an oral agreement for the exchange of news. The plaintiffs, however, assert that this agreement was terminated before 1951, to which the defendant replies that not only was no notice of termination given, but also that no demand had been made upon him to discontinue. The plaintiffs appealed to the Associated Press in the hope that its intercession would relieve them of a task that was not only distasteful but which might have affected the friendly relations between the parties. But it appears that the Associated Press did not fully appreciate the importance of the matter to the plaintiffs and, hence, presented the matter to the defendant so inadequately that he was not aware of plaintiffs' attitude until served in this action.

The plaintiffs contend that the practice referred to constituted unfair competition because, in competing for advertisements, the defendant used the news items from the plaintiffs' newspaper. On the other hand, the defendant contends that he acted in good faith under the oral agreement referred to, without notice of its termination; that the plain-

tiffs are not entitled to injunctive relief because of laches and conduct warranting the application of the doctrine of estoppel, and because they failed to prove any damage by reason of the practice complained of. In this connection, it is worthy of note that the defendant's business suffered a relatively greater loss than that of the plaintiffs for the period under discussion, from which it would not be unreasonable to infer that other factors were responsible for plaintiffs' loss of earnings.

■ In respect of the claim of unjust enrichment, as it bears on the issue of damages alone, the contention of the defendant is that the plaintiffs are not the real parties in interest because the Associated Press was the only one deprived of the revenue it would have received from the defendant, and because the plaintiffs would have had to pay for the news service in any event. I am of the opinion, however, that the appropriation of the product of a competitor constitutes unfair competition irrespective of whether the extent of unjust enrichment can be determined. International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211; Associated Press v. KVOS, Inc., 9 Cir., 80 F.2d 575, reversed on other grounds, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183. These decisions foreshadowed the development of the concept of unfair competition, theretofore limited almost exclusively to "palming off" cases, to include unjust enrichment through the appropriation of the fruits of another's toil. A recognition of this development is implicit in the employment of the broader term unfair "trade practices" to describe this particular tort in the introductory note to Chapter 35, 3 Restatement, Torts. It is also worthy of note that Congress has left it to the Courts to determine the scope of the concept of "unfair competition". 15 U.S.C.A. § 45(a); 2 Toulmin's Anti-trust Laws, Sec. 43.1–43.30. The courts would be derelict, indeed, if they failed in the development of the law in the traditional fashion to serve the ex-

panding needs of society. And there is no incompatibility between the paramount public interest in the dissemination of news and the prevention of unconscionable business practices. It may, therefore, be concluded that one may no longer earn his bread by the sweat of some one else's brow. Cf. "Unjust Enrichment in the Law of Unfair Competition", 55 Harvard Law Review 595.

■ Turning to the defense that the broadcasting was done under an oral agreement between the parties, it appears that what was contemplated was the exchange of Associated Press news files which were being regularly received by the parties at that time. The evidence, however, is so meager that I am unable to find that this defense has been sustained.

■ Whether or not credit was given in the broadcasts to the plaintiffs' newspaper, which is sharply disputed, is not controlling. As was said in International News Service v. Associated Press, 248 U.S. 215, 242, 39 S.Ct. 68, 73, 63 L.Ed. 211, "It is something more than the advantage of celebrity of which complainant is being deprived."

■ Since unfair competition, so far as damages is concerned, does not differ from other torts, although proof of damages to intangibles is extremely difficult, recovery in this case is likewise limited to the actual pecuniary loss sustained in profits or as a result of injury to the plaintiffs' business, reputation or good will. The evidence is not only insufficient to prove any loss proximately caused by the defendant's misconduct, Cf. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544; Wawak & Co. v. Kaiser, 7 Cir., 129 F.2d 66, but also to what extent the defendant was unjustly enriched. In this situation the Court has no discretion to order an accounting or to declare a constructive trust. Neither can there be an award beyond nominal damages. Intro. Note to Ch. 35, 3 Restatement, Torts 541, 4 Restatement,

Torts 579, 739, Secs. 912, comment (d), 944, comment (d). The difficulty of determining damages, which renders the legal remedy inadequate, explains why most unfair competition cases are litigated in courts of equity.

So far as the defenses of laches and estoppel are concerned, the evidence is that the defendant began the practice complained of in June 1951. It was not until October, however, that the plaintiffs complained to the Associated Press. It does not clearly appear that the plaintiffs made any demand upon the defendant to cease broadcasting their news except by commencing this action in May, 1952. It is my opinion that the evidence supports the defenses of laches, acquiescence and estoppel, 3 Restatement, Torts, Secs. 751, 754, 892, 894(2), 28 Am.Jur., Injunctions, Secs. 61–67; 30 C.J.S., Equity, §§ 100, 117, page 501; 31 C.J.S., Estoppel, §§ 87, 88, 113 and 114, page 305. But it does not necessarily follow that equity will refuse injunctive relief because of laches where the proof of a wrongful appropriation is clear even though such delay may preclude the party from the right to an accounting for past profits. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828. However, it is elementary that an injunction cannot be granted where the injury is merely anticipatory. Smith v. Suratt, 7 Alaska 416. In the instant case, the defendant, pursuant to his stipulation has discontinued the practice complained of and has promised not to resume it. In this situation the question for determination is whether the threat to the plaintiffs may be deemed to persist, since it is well settled that a discontinuance of wrongful conduct does not alone warrant the denial of injunctive relief. U. S. v. Oregon State Medical Society, 343 U.S. 326, 72 S.Ct. 690, 96 L. Ed. 978; Franz v. Franz, 308 Mass. 262, 32 N.E.2d 205, 135 A.L.R. 1448. I am convinced that further misappropriation is not reasonably to be apprehended and accordingly I am of the opinion that the injunction should be denied, but that plaintiff is entitled to nominal damages.