Peter A. Quinn, J.
Motions under calendar numbers 128 and 164 are consolidated hereon and disposed of together.
Motion for a temporary injunction restraining the defendants from manufacturing, selling and distributing a certain phonograph record entitled “ The Original Greatest Hits,” which contains identical reproductions of certain phonograph records being sold by plaintiff. Plaintiff hereon also seeks an order restraining the defendants from using, transferring or disposing of the master recording used in the manufacture of “ The Original Greatest Hits ”.
By a separate motion the defendants move to dismiss the complaint herein pursuant to 3211 CPLR (subd. [a], par. 2, 7) on the grounds that the court does not have jurisdiction of the subject matter and that the complaint fails to state a cause of action.
Following the most “ massive public relations campaign ” in the history of the phonograph record industry, which was carried out by plaintiff, “ The Beatles ” recordings in this country achieved results ‘ ‘ unprecedented in the history of the record business.”
The first Capitol “Beatles” single record and two Capitol long-playing albums (“ Meet the Beatles ” and “ The Beatles Second Album ”), all of which achieved excellent results, were admittedly reproduced by defendants in their album which is the subject of this action.
Plaintiff further charges that the defendants, in order to inform the public of the fact that the subject album contains performances by “ The Beatles” have placed on the album’s jacket simulated shadow drawings of the distinctive and instantly recognizable “ pudding basin” hair style worn by the Beatles.
The subject record is being sold in this State and elsewhere.
Plaintiff alleges, and defendants do not deny that defendants “ made tape recordings of certain renditions by ‘ The Beatles ’ from Capitol’s albums * * * and ‘ single,’ and then made a master * * * and have pressed the records just as if it was the bona fide product of the plaintiff ”. The “ counterfeit ” record is being sold by wholesalers and retailers at a lower price than plaintiff’s albums. (The “counterfeit” record can be bought at a retail price of about $2.99, while plaintiff’s product sells for about $3.98.) In addition, defendants do not have the expenses of paying performers, producers, union funds and excise taxes, and do not pay for promotion or advertising.
Plaintiff contends that, in addition to a financial loss of royalties, it loses public good will because of the fact that the product *880 turned out by defendants is inferior to that produced by it. This inferior product allegedly results from the use of cheaper materials and the remastering process, which result in a loss of sound quality.
The complaint, which is based upon the above facts, alleges that the acts of the defendants constitute unfair competition.
Defendants contend that the sale to the public of plaintiff’s records ‘ ‘ constituted a dedication to the public of said records and of the performances thereon ”, and that this “ dedication rendered lawful the copying, manufacture and sale by the defendants ” of the subject record album, and that it divested plaintiff of any property rights in the premises and “ has deprived this court of any and all jurisdiction over the-cause of action ”. Defendants further contend that plaintiff, in seeking the relief sought by this suit, is violating the Sherman AntiTrust Act of July 2, 1890 (U. S. Code, tit. 15, §§ 1 — 2; 8-9, as amd.). Defendant argues that the subject matter of this action is exclusively one of Federal cognizance.
Both defendants’ motion and their opposition to the plaintiff’s motion for a temporary injunction are based upon the cases of Sears, Roebuck Co. v. Stiffel Co. (376 U. S. 225) and Compco Corp. v. Day-Brite Lighting (376 U. S. 234). Such reliance is ill-placed, as these cases are not applicable to the subject matter and devious conduct of defendants which this court is presently called upon to deal with.
The only issue presented hereon is whether defendants may appropriate the performances contained on plaintiff’s phonograph records.
It is undisputed that prior to the Sears, Roebuck and Compco cases (supra) the law of this State protected the plaintiff from unauthorized reproduction of the performances embodied on a master recording, basing such protection upon the doctrines of unfair competition, common-law copyright or unlawful interference with contract. (Metropolitan Opera Assn. v. Wagner-Nichols Recorder Corp., 199 Misc. 786, affd. 279 App. Div. 632; Capitol Records v. Mercury Records Corp., 221 F. 2d 657; Ettore v. Philco Tel. Broadcasting Corp., 229 F. 2d 481, cert. den. 351 U. S. 926; Radio Corp. of America v. Premier Albums, 19 A D 2d 62, 63; King v. Mister Maestro, 224 F. Supp. 101; Mutual Broadcasting System v. Muzak Corp., 177 Misc. 489; 20th Century Sport Club v. Transradio Press Serv., 165 Misc. 71; Uproar Co. v. National Broadcasting Co., 8 F. Supp. 358, 362.)
Sears, Roebuck Co. v. Stiffel Co. (supra) dealt with the sale to the public by defendant of a lamp which was “ substantially identical” (376 U. S. 225, 226) to that produced by plaintiff. *881 Compco Corp. v. Day-Brite Light, (supra) dealt with the sale of an imitation of plaintiff’s lighting fixture which allegedly was distinctive in design. Neither of those learned decisions stands for the proposition that this plaintiff is not entitled to protection against the unauthorized appropriation, reproduction or duplication of the actual performances contained in its records.
This court has been presented with the question posed herein on two occasions subsequent to the Supreme Court cases so heavily relied upon by defendants.
This court held in Columbia Broadcasting System v. Documentaries Unlimited (42 Misc 2d 726-727) that “In these unfair competition ‘ copying ’ cases [Sears, Roebuck, and Compco cases] the Supreme Court held that when an article is unprotected by a patent or a copyright, State law may not forbid others to copy that article. But it was pointed out that State law, statutory or decisional, may in appropriate circumstances grant relief ivhere deceptive or fraudulent practices are shown, such as in palming off one’s goods as those of another * * *. It is equally clear that the right of an author or proprietor of an unpublished work to common-law protection and the application of State law of unfair competition in that field remains unaffected by these decisions or the principles set forth in these opinions * * *. [T]he well-settled rule is that public performance of a work, such as * m * singing of a song * * * whether given in public or over the radio or television, is not such a general publication as constitutes a dedication to the public or places it in the public domain, with consequent loss of copyright [citing cases] * * *. Actually, what was here done was not the copying of some article or goods made and sold by another but rather the appropriation of the very product itself ”. (Emphasis added.)
This court, once again referring to the two Supreme Court decisions, stated in Flamingo Telefilm Sales v. United Artists Corp. (N. Y. L. J., May 4, 1964, p. 16, cols. 6-7), [Hecht, J.]) as follows: “However, in those cited cases the court was concerned with the copying of an unpatented and uncopyrighted product. This is to be distinguished from the instant case where the complaint, essentially, is of an appropriation of the very item licensed. It is clear, under these cases, that if defendants had copied the movie concerned and produced their own movie based upon the same plot and themes, plaintiff would be entitled to no protection outside of the Federal copyright laws. There is a distinction between such an act, i.e., the copying of an idea, *882 and the actions complained of herein, to wit, the use of the identical product for the profit of another.” (Emphasis added.)
The law of this jurisdiction is still “ that, where the originator * * * of records of performances by musical artists puts those records on public sale, his act does not constitute a dedication of the right to copy and sell the records.” (Capitol Records v. Mercury Records Corp., 221 F. 2d 657, 663, supra, incorporating the law of this State as set forth in Metropolitan Opera Assn. v. Wagner-Nichols Recorder Corp., supra.)
Accordingly, the motion for a temporary injunction is granted, and the companion motion to dismiss the complaint is denied. Bond is fixed in the sum of $5,000.