LIBERTY/UA, INC. v. EASTERN TAPE CORPORATION, G & G
    SALES, INC., J. M. PETTUS AND JOHN DOE 1 THROUGH JOHN
    DOE 200

No. 7126SC259

(Filed 28 April 1971)

1. **Unfair Competition— record piracy — taping and selling recorded performance — injunctive relief**

    It is unfair competition for a company to copy on magnetic tapes
    the phonograph records that were produced by a recording company
    and to sell the taped performances in competition with the recording
    company; such conduct may be temporarily enjoined.

2. **Unfair Competition— record piracy — effect of statute allowing unrestricted use of records**

    The 1939 statute providing that any phonograph record sold for
    use in this State may be played privately, publicly, and commercially
    without restriction does not permit the unfair commercial practice
    of record piracy. G.S. 66-28.

APPEAL by defendants from *Snepp, Superior Court Judge,*
4 January 1971, Schedule "D" Session, Superior Court of MECK-
LENBURG County.

Plaintiff is a California corporation engaged in the manu-
facture and sale of phonograph recordings. It has written con-
tracts with Bobby Goldsboro, "Canned Heat," "Sugarloaf" and
other individual and groups of singers and performers wherein
the performers grant plaintiff the exclusive right to manufac-
ture, reproduce and sell phonograph recordings embodying their
performances.

In this action, filed 11 December 1970, plaintiff alleges that
defendants "pirate" or appropriate performances embodied in
plaintiff's recordings by acquiring a copy of the recordings and
transposing the performance onto magnetic tapes which are
then sold by defendants in competition with plaintiff. The trans-
position is accomplished by the simple method of playing plain-
tiff's recordings before electrical recording equipment which
transposes the performances onto defendants' tapes. Plaintiff
alleges that this conduct by defendants amounts to unfair com-
petition and asks that defendants be temporarily and perma-
nently restrained from these practices.

The record does not reflect any answer filed by defendants.
However, in various affidavits and in briefs filed in Superior

Court and here, defendants admit the conduct alleged in the complaint, but they deny that it constitutes a basis for injunctive relief.

Plaintiff's motion for a temporary restraining order was granted by Judge Snepp in an order dated 6 January 1971. Defendants appealed.

*Smith, Moore, Smith, Schell & Hunter by Jack W. Floyd and Harold N. Bynum for plaintiff appellee.*

*Richards & Shefte by Francis M. Pinckney and Levine, Goodman & Murchison by Alton G. Murchison III and Sol Levine for defendant appellants.*

GRAHAM, Judge.

[1]    Plaintiff claims no statutory or common law copyrights in its recordings. Consequently, the principal question presented is whether the defendants' conduct in appropriating the performances recorded by plaintiff and selling them in competition with plaintiff amounts to unfair competition which may be enjoined. We answer in the affirmative.

In *Steak House v. Staley,* 263 N.C. 199, 203, 139 S.E. 2d 185, 189, Justice Sharp quoted from the opinion by Denny, Justice (later Chief Justice), in *Extract Co. v. Ray,* 221 N.C. 269, 273, 20 S.E. 2d 59, 61, as follows: " 'The test (of unlawful competition) is simple and lies in the answer to the question: Has plaintiff's legitimate business been damaged through acts of the defendant's which a court of equity would consider unfair?' "

The damage occurring to plaintiff's business from the conduct of defendants is easily apparent. Plaintiff expends substantial sums of money in obtaining the services of popular artists and in recording their performances. As found by the trial court, "[i]n order to sell the recordings embodying performances to which plaintiff possesses exclusive rights, and to build good will, such performances, the names of the artists, and the recordings produced by plaintiff are advertised and promoted at great expense to plaintiff." In appropriating the fruits of plaintiff's initiative, skill, effort and expense to their own use, defendants obviously circumvent a great portion of the cost of engaging in the recording business. They thereby gain

substantial competitive advantage over plaintiff. This conduct, it seems to us, amounts to unfair competition and is subject to restraint.

We find the decision in *Internat'l News Serv. v. Asso. Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L. Ed. 211 (1918), particularly applicable to the instant case. There, the International News Service (I.N.S.) was enjoined by a U. S. District Court from copying from bulletin boards and early editions, news gathered by the Associated Press, and then selling the news in competition with Associated Press editions. In affirming the order granting the injunction, the United States Supreme Court stated:

> "The right of the purchaser of a single newspaper to spread knowledge of its contents gratuitously, for any legitimate purpose not unreasonably interfering with complainant's right to make merchandise of it, may be admitted; but to transmit that news for commercial use, in competition with complainant,—which is what defendant has done and seeks to justify, — is a very different matter. In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill, and money and which is salable by complainant for money, and that defendant, in appropriating it and selling it as its own, is endeavoring to reap where it has not sown, and by disposing of it to newspapers that are competitors of complainant's members is appropriating to itself the harvest of those who have sown. Stripped of all disguises, the process amounts to an unauthorized interference with the normal operation of complainant's legitimate business precisely at the point where the profit is to be reaped, in order to divert a material portion of the profit from those who have earned it to those who have not, with special advantage to defendants in the competition because of the fact that it is not burdened with any part of the expense of gathering the news."

Defendants contend that during the more than fifty years since the *I.N.S.* decision, the case has lost its significance. They cite many cases supporting the proposition that the *I.N.S.* case must be limited to its own particular set of facts. If this be

conceded, it nevertheless appears that the conduct of defendants here is so remarkably similar to the conduct condemned in the *I.N.S.* case as to bring it within even a limited application of the principles of that case.

The recent companion cases of *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L. Ed. 2d 661 (1964), and *Compco Corp. v. Day-Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L. Ed. 2d 669 (1964), are cited by defendants as conclusively establishing the present ineffectiveness of the *I.N.S.* decision. Defendants also urge that these cases permit the type of record piracy in which they admittedly engage. In the *Sears* case, Sears manufactured, and sold at a lower price, lamps similar to those manufactured and sold by Stiffel. In *Compco,* Compco manufactured and sold fluorescent lighting fixtures similar to those manufactured and sold by Day-Brite. Neither product was patented. It was admitted that defendants had copied plaintiffs' designs. The United States Supreme Court held that the copying of unpatented products is permissible despite any state laws to the contrary, saying in effect, that to permit a state to prevent the copying of an article which could not be patented would be to allow the state to keep from the public something which federal law has said belongs to the public.

No case from any jurisdiction has been brought to our attention which holds the *Sears* and *Compco* decisions applicable to a factual situation similar to the one we are now considering. There is an abundance of authority to the contrary.

In *Capitol Records, Inc. v. Spies,* _____ Ill. App. 2d _____, 264 N.E. 2d 874, the Illinois Appellate Court considered an attempt by a record producer to enjoin a defendant from the identical practices engaged in by defendants in the instant case. In ordering an injunction that Court stated:

> "We believe that the facts of the instant case are clearly distinguishable from the *Sears* and *Compco* decisions, and we find that the trial court erred in denying Capitol's motion for a temporary injunction. Whereas in those cases the court was concerned with the copying of products which were not patented, in the instant case Spies was actually appropriating another's property. Rather than the *Sears*

and *Compco* decisions, we find that the case of *International News Service v. Associated Press . . .* is controlling."

In *Capitol Records, Inc. v. Greatest Records, Inc.*, 43 Misc. 2d 878, 252 N.Y.S. 2d 553, a New York trial court enjoined defendants from making records from plaintiff's record albums. There, as here, defendants' opposition was based upon the *Sears* and *Compco* decisions. The court stated: "Such reliance is ill-placed, as these cases are not applicable to the subject matter and devious conduct of defendants which this court is presently called upon to deal with." After noting that *Sears* dealt with the sale of a substantially identical lamp and *Compco* dealt with the sale of an imitation of a lighting fixture, the court said: "Neither of those learned decisions stands for the proposition that this plaintiff is not entitled to protection against the unauthorized appropriation, reproduction or duplication of the actual performances contained in its records."

Other cases, decided subsequent to *Sears* and *Compco* and enjoining activities of the type here involved, include: *Flexitized, Inc. v. National Flexitized Corp.*, 335 F. 2d 774 (2d Cir. 1964), cert. denied, 380 U.S. 913 (1965) ; *Grove Press, Inc. v. Collectors Publication, Inc.*, 264 F. Supp. 603 (C.D. Cal. 1967) ; *Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.*, 247 F. Supp. 578 (E.D. Pa. 1965) ; *Capitol Records, Inc. v. Erickson*, 2 Cal. App. 3d 526, 82 Cal. Rptr. 798; *Columbia Broadcast. Sys., Inc. v. Documentaries Unlim., Inc.*, 42 Misc. 2d 723, 248 N.Y.S. 2d 809.

We find the numerous decisions distinguishing the *Sears* and *Compco* cases from cases similar to the one at hand to be sound. Defendants here are not copying a design or concept. They have not obtained the same artist to record the same song in an identical manner. This type of "copying" would presumably be protected by the decisions of *Sears* and *Compco*. Conduct of that sort, however, is a far cry from appropriating, for use in competition with plaintiff, the very product which plaintiff produced with its own resources.

We find no North Carolina cases dealing with the question presented on this appeal. However, in other states where the question has arisen, courts have, without exception, condemned record piracy as unfair competition. *Tape Industries Association of America v. Younger*, 316 F. Supp. 340 (C.D. Cal. 1970) ; *Capitol*

*Records, Inc. v. Spies, supra; Capitol Records, Inc. v. Erickson, supra; Capitol Records, Inc. v. Greatest Records, Inc., supra; Gieseking v. Urania Records, Inc.,* 17 Misc. 2d 1034, 155 N.Y.S. 2d 171; *cf. Columbia Broadcast. Sys., Inc. v. Documentaries Unlim., Inc., supra; Metropolitan Opera Ass'n. v. Wagner-Nichols R. Co.,* 199 Misc. 786, 101 N.Y.S. 2d 483.

[2]   Defendants argue that the provisions of G.S. 66-28 preclude us from following the unanimous authority of other jurisdictions which have passed upon the precise issue which is now before us. The provisions of G.S. 66-28 are as follows:

> *"Prohibition of rights to further restrict or to collect royalties on commercial use.*—When any phonograph record or electrical transcription, upon which musical performances are embodied, is sold in commerce for use within this State, all asserted common-law rights to further restrict or to collect royalties on the commercial use made of such recorded performances by any person is hereby abrogated and expressly repealed. When such article or chattel has been sold in commerce, any asserted intangible rights shall be deemed to have passed to the purchaser upon the purchase of the chattel itself, and the right to further restrict the use made of phonograph records or electrical transcriptions, whose sole value is in their use, is hereby forbidden and abrogated.

> Nothing in this section shall be deemed to deny the rights granted any person by the United States Copyright Laws. The sole intendment of this enactment is to abolish any common-law rights attaching to phonograph records and electrical transcriptions, whose sole value is in their use, and to forbid further restrictions of the collection of subsequent fees and royalties on phonograph records and electrical transcriptions by performers who were paid for the initial performance at the recording thereof."

The above statute was enacted in 1939. Apparently record piracy did not become a problem until sometime later. In an article on the subject published in the Stanford Law Review in 1953 it is stated: " 'Pirating,' in this instance, describes the practice of re-recording a phonograph record manufactured by another company and then selling the duplicates. Record piracy mushroomed in the last five years from relative obscurity to a

point where two dozen labels were being sold in various parts of the country. A few 'pirates' circulated catalogs of their booty. Some labels received a national distribution and were handled in the most legitimate stores. Occasionally, 'dubs' were even used in local juke boxes." 5 Stan. L. Rev. 433. It is unlikely that in 1939 the legislature had heard of this type of conduct, and we cannot conceive that one of its purposes in enacting G.S. 66-28 was to make legitimate such unfair competitive practice.

G.S. 66-28 was enacted shortly after the Federal District Court for the Eastern District of North Carolina held that Fred Waring had a common law property right in his orchestra's recordings and could prevent defendant from playing the recordings over a radio station without his permission. *Waring v. Dunlea,* 26 F. Supp. 338 (E.D. N.C. 1939). The effect of G.S. 66-28 was to overrule the *Waring* decision by eliminating any common law right to restrict the use of a recording sold for use in this State. However, we interpret "use," as employed in the statute, to mean the use for which a recording is intended; *i.e.,* the playing of the recording. Thus, under the statute, any record sold in commerce for use in this State may be played privately, publicly, and commercially without restriction. It does not follow, however, that the performance contained on the record can be re-recorded onto another record and the re-recording sold in competition with the original producer. To so hold would, in our opinion, give a construction to the statute that was never intended.

[1] Defendants assign as error the court's findings that if they were not temporarily enjoined, plaintiff would suffer irreparable damage. In our opinion there was plenary evidence to support that finding and this assignment of error is overruled.

Affirmed.

Judges CAMPBELL and BRITT concur.