124 N.J. Super. 322 (1973)
306 A.2d 493
COLUMBIA BROADCASTING SYSTEM, INC., ETC., PLAINTIFF,
v.
MELODY RECORDINGS, INC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided May 28, 1973.
*323 Mr. William H. Hyatt, Jr. for plaintiff (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Sheldon A. Weiss for Defendants U.S. Tape Inc. and George Tucker (Messrs. Glauberman & Weiss, attorneys).
Mr. Joel D. Siegal for Defendants Melody Recordings, Inc. et al. (Messrs. Hellring, Lindeman & Landau, attorneys).
KIMMELMAN, J.S.C.
Columbia Broadcasting System, Inc. (C.B.S.) brings this class action for itself and on behalf of all other recording companies that produce, manufacture *324 and sell musical performances on records and tapes. It is alleged that C.B.S. contracts with well-known artists for the exclusive right to record their performances, and that by the use of costly and sophisticated equipment records their performances upon master recordings and at great expense manufacturers records and tapes from such masters. C.B.S. pays royalties to the recording artists and to the proprietors of the copyrights of the musical compositions involved, based upon the sales of records and tapes under C.B.S.'s exclusive label. It is charged that defendants unlawfully copy and reproduce the recorded performances embodied on the records and tapes manufactured and sold by C.B.S. and other recording companies by mechanically duplicating the recordings and transferring the exact duplicated sound onto their own records and tapes. In the trade this process is known as "pirating." The products thereby offered for sale are known as "pirated records" and "pirated tapes." C.B.S. contends that defendants have unjustly enriched themselves at its expense. More specifically, it alleges that the acts of defendants constitute a violation and infringement of its common law copyrights, are an unlawful and unauthorized appropriation of its rights, constitute unfair competition and are an unlawful interference with its contractual rights. An injunction against the pirating is sought, as well as an accounting and damages both compensatory and punitive.
Both sides have filed cross-motions for summary judgment, supported by extensive and detailed affidavits. Additionally, defendants seek a stay of this action pending a decision by the United States Supreme Court in Goldstein v. California, No. 71-1192. The specific question presented in Goldstein is whether the copyright clause of the U.S. Constitution and the federal copyright act preempt, under the supremacy doctrine, state anti-tape and record pirating laws or preclude the application of unfair competition principles to prevent such pirating. This court heretofore denied *325 C.B.S.'s application for a stay, reserving for decision at this time the motions for summary judgment.
An abbreviated view of federal law relating to copyrights in the music recording area is necessary for the comprehension and adjudication of this matter. The U.S. Constitution grants to Congress the power:
To promote the Progress of Science and useful Arts, by securing for limited times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries. [U.S. Const., Art. I, § 8, cl. 8]
Pursuant to this grant Congress first legislated upon the subject in 1790, the latest general revision of the law being the Copyright Act of 1909, 17 U.S.C.A. § 1 et seq. At that time, and in light of what was then a new technological advance in the wake of Edison's invention, copyright protection was given to authors of musical compositions against the recording or mechanical reproduction of their copyrighted musical work. Prior to the 1909 revision it had been held that the manufacture of phonograph records embodying a copyrighted musical composition was not an infringement of that copyright. White-Smith Pub. Co. v. Apollo Co., 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655 (1908). By virtue of § 1(e) of the 1909 act, which for the first time extended copyright control over the recording industry, it was provided in pertinent part as follows:
And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof. * * *
In basic terms, Congress granted to a composer the right to prohibit mechanical reproduction of his work but provided at the same time, in order to foster the widest dissemination *326 of musical works for the benefit of the public, that once a composer approved and permitted the use of his copyrighted work for mechanical reproduction then, upon payment of the congressionally prescribed royalty, "any other person" or (in effect) all who desired, might at will reproduce the music. Such is the so-called "compulsory license" provision relied upon by all defendants in this case. 17 U.S.C.A. § 1 (e). They allege compliance with 17 U.S.C.A. § 101(e) by serving notices of intention to use the musical composition upon the copyright owners and by paying royalties for each so-called "pirated record" or "pirated tape." Under this procedure nothing is paid to the original record or tape manufacturer, such as C.B.S., who has the underlying contractual arrangement with the proprietor of the musical copyright. Although the fruits of the manufacturer's efforts are utilized in the pirating process, the manufacturer is completely by-passed with respect to royalty payments. Until a recent congressional enactment added subsection (f) to § 1 of the Copyright Act of 1909, see Pub. L. 92-140, effective February 15, 1972, the manufacturers of sound recordings produced prior to that date were without copyright protection for such recordings. Shaab v. Kleindienst, 345 F. Supp. 589 (D.C. 1972); Int'l. Tape Mfrs. Ass'n v. Gerstein, 344 F. Supp. 38 (S.D. Fla. 1972).
As to pre-February 15, 1972 recordings (and only that category of recordings is involved before this court) the issue for decision depends upon whether Congress intended to permit, upon compliance with the compulsory licensing provisions, unlimited mechanical reproduction of musical recordings by means of pirating, and whether such pirating can be prohibited by resort to state laws dealing in general with the subject of unfair competition. Included within such issue is whether congressional enactments in this area have preempted state unfair competition laws insofar as pirated recordings are concerned.
*327 The subject is complex, and divergent decisions have emanated from various judicial districts. Duchess Music Corp. v. Stern, 458 F.2d 1305 (9 Cir.1972), cert. den. 409 U.S. 847, 93 S.Ct. 52, 34 L.Ed.2d 88; Tape Industries Ass'n of America v. Younger, 316 F. Supp. 340 (C.D. Cal. 1970), app. dism. 401 U.S. 902, 91 S.Ct. 880, 27 L.Ed.2d 801 (1971); Tape Head Co. v. R.C.A. Corp., 452 F.2d 816 (10 Cir.1971); Int'l. Tape Mfrs. Ass'n v. Gerstein, supra; Capital Records, Inc. v. Greatest Records, Inc., 43 Misc.2d 878, 252 N.Y.S.2d 553 (Sup. Ct. 1964). See, specifically, the comprehensive opinion by U.S. District Judge Lacey in Jondora Music Publishing Co. v. Melody Recordings, Inc., 351 F. Supp. 572 (D.N.J. 1972). The preceding list of citations is by no means exhaustive of the subject.
The difficulty arises from the lack of any uniform interpretation concerning the Supreme Court's holdings in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), and from uncertainty as to whether Sears and Compco undercut the ruling in International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918). It is hoped that the area will be clarified by the Court in Goldstein now pending for decision. As a consequence, this court's opinion on the subject may well become a gratuitous exercise. However, in view of the uncertainty both as to the ultimate decision in Goldstein and as to when the same will be rendered, there is no reason to delay disposition of the instant matter now pending on the calendar of this court.
Based upon my review, I conclude that the Supreme Court's decisions in Sears and Compco are controlling and dispositive of the issues here involved. In Sears it appeared that Sears, at relatively small expense, manufactured and marketed a substantially identical copy of a pole lamp originally designed, manufactured and marketed by Stiffel. *328 The issue as posed by the Supreme Court was whether a state's unfair competition laws can, consistently with the federal patent laws, impose liability for or prohibit the copying of an article which is protected by neither a federal patent nor a copyright. The court stated that
[patent and copyright laws] enacted pursuant to constitutional authority are the supreme law of the land. * * * When state law touches upon the area of these federal statutes it is "familiar doctrine" that the federal policy "may not be set at naught or its benefits denied" by the state law." * * * This is true, of course, even if the state law is enacted in the exercise of otherwise undoubted state power. [376 U.S. at 229, 84 S.Ct. at 787]

* * * *
Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law, such as that forbidding unfair competition, give protection of a kind that clashes with the objectives of the federal patent laws. [Id. at 231, 84 S.Ct. 789]
Sears specifically held that "because of the federal patent laws, a State may not, when the article is unpatented and uncopyrighted prohibit the copying of the article itself or award damages for such copying." 376 U.S. at 232, 84 S.Ct. at 789. If otherwise, the court reasoned, perpetual state protection by use of its unfair competition laws would be granted to an article which federal law has said belongs to the public by simple virtue of its lack of entitlement to patent or copyright protection.
In Compco, which involved the identical copying of a distinctive but unpatentable fluorescent lighting fixture, the court again rejected the application of state unfair competition laws, reiterating its holding in Sears as follows:
* * * when an article is unprotected by a patent or copyright, state law may not forbid others to copy that article. To forbid copying would interfere with the federal policy found in Art. I, § 8, cl. 8, of the Constitution and in the implementing federal statutes, of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." [376 U.S. at 237, 84 S.Ct. at 782]
International News Service v. Associated Press, supra., which preceded Sears and Compco by some 46 years, under *329 pre-Erie R.R. Co. v. Tompkins doctrine invoked a general federal common law of "unfair competition" to prevent I.N.S. from copying news bulletins from early editions of newspapers serviced by Associated Press. In effect, I.N.S. was held to have wrongfully pirated and published as its own, uncopyrighted news which A.P. had gathered. As above noted, a question exists as to the continuing vitality of the ruling by the United States Supreme Court in that case.
For illustrations of the current state of confusion, compare Columbia Broadcasting System, Inc v. Custom Recording Co., Inc., 258 S.C. 465, 189 S.E.2d 305 (S.C. Sup. Ct. 1972), with Columbia Broadcasting System, Inc. v. DeCosta, 377 F.2d 315 (1 Cir.1967). The Supreme Court of South Carolina in the former C.B.S. case followed International News Service v. Associated Press, supra, drawing a distinction between merely copying and actually appropriating another's product and granted an injunction prohibiting what it termed as "disklegging." On the other hand, the First Circuit Court of Appeals in the latter C.B.S. case held that International News Service v. Associated Press, supra, had been clearly overruled by Sears and Compco.
In our own State, Press Publishing Co. v. Atlantic County Advertiser, Inc., 59 N.J. 356 (1971), is significant. At issue was the right of the publisher of a daily newspaper to enjoin the publisher of a weekly newspaper from copying and publishing advertisements which had earlier appeared in the daily newspaper. Without any reference to International News Service v. Associated Press, supra, the court placed complete reliance upon Sears and Compco, thereby upholding the dismissal of the action. In the absence of any federal copyright protection the court refused to justify state court jurisdiction by the device of labeling the action as one for "unfair competition." 59 N.J. at 359.
While some courts, as indicated, have found a distinction between the copying of an unpatented design and the exact duplication of a recorded musical composition, I find such *330 distinction to be conceptually meaningless. There is absolutely no difference in the end result when Sears makes a mold from a lamp pole designed and produced at great expense by Stiffel or when a so-called "pirate" makes an exact duplicate of a recording produced at great expense by C.B.S. Although the means may differ, the end result is exactly the same. The same is true when a weekly newspaper copies and publishes as its own an advertisement previously appearing in a daily. In each instance a businessman has appropriated the unpatented or uncopyrighted product of another and placed on the market as his own an identical product. To draw a distinction in the case of "pirating" or "disklegging" is to invest a difference without substance. The rights of the parties cannot be made to rest on so fine a subtlety.
No comment is required as to the morality or ethics of the business practice involved. The federal intendment is clear. In the absence of patent protection or copyright protection, exact copies or duplicates may be made by anyone. If a person is not an infringer under federal patent or copyright law and thereby insulated from liability, a contrary result in state courts is not dictated simply because the very same conduct is earmarked by a different label. To allow state law to prohibit such copying or duplication would be to afford state protection in a federal area where Congress itself has provided for none.
Under the circumstances, summary judgment must be granted in favor of all defendants.