54 CCPA

### Application of MOGEN DAVID WINE CORPORATION.

### Patent Appeal No. 7705.

United States Court of Customs
and Patent Appeals.

Feb. 16, 1967.

Sidney Wallenstein, Chicago, Ill. (Ben Cohen, Washington, D. C., Charles B. Spangenberg, Chicago, Ill., of counsel), for appellant.

Joseph Schimmel, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

Mogen David Wine Corporation appeals from the decision of the Trademark Trial and Appeal Board refusing to grant registration on the Principal Register of the configuration of a decanter bottle as a trademark for wines.

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

The application [1] drawing depicts the bottle as follows:

Appellant contends that the evidence adduced proves that the mark sought to be registered has acquired, for wines, a secondary meaning. The examiner found the evidence insufficient to support this contention. On appeal the board refused to consider the evidence adduced but held that a then existing, but now expired, design patent [2] covered the decanter bottle of the instant application and that the bottle configuration "is precluded as a matter of law during the life of the design patent from constituting subject matter which may properly be registered on the Principal Register." On appeal this court in In re Mogen David Wine Corp., 328 F.2d 925, 51 CCPA 1260, held, in substance, that the existence of the design patent did not preclude appellant's right to register on the Principal Register, and remanded the case to the board "for decision on the factual issue as to whether the evidence submitted is sufficient to establish that appellant's bottle design functions as a trademark to indicate origin" (328 F.2d p. 932, 51 CCPA pp. 1268–1269). In its decision on remand from this court the board affirmed the examiner's refusal of registration on the ground of insufficient evidence of secondary meaning. It is from the latter decision that the instant appeal has been taken.

In his brief on behalf of the Commissioner of Patents and in argument before us, the solicitor challenges "as clearly erroneous the law of the case as established by the majority opinion in Appeal No. 7085. In re Mogen David Wine Corp.," supra. Suffice it to say that in reaching our decision in appeal No. 7085, we considered, as we do in the instant appeal, the authorities cited and the arguments made as to their relevancy to the issue raised. We are not persuaded of error in our former decision, and consequently we adhere thereto. This conclusion disposes of the motion filed by appellant on October 7, 1966 to strike certain parts of the Brief for the Commissioner of Patents filed September 12, 1966, and taken under advisement by us by order dated October 31, 1966.

The sole issue, therefore, is whether the configuration of appellant's decanter bottle has acquired a secondary meaning under section 2(f) of the Lanham Act so as to function as a trademark identifying appellant's wines and distinguishing them from those of others.

1. Serial No. 73,406, filed May 11, 1959.

2. No. 158,213, issued April 18, 1950 for a term of 14 years.

The factual situation found by the board and accepted by us is as stated in our opinion in appeal No. 7085, supra, 328 F.2d 925, 51 CCPA at page 1262. We incorporate same herein by reference.

We have examined appellant's advertising and promotional material appearing of record. We find therein no promotion advertisement or display of the container configuration per se as an indication of the origin of the wines. While a decanter bottle of wine is featured, there is nothing to indicate that the container has been promoted separate and apart from the word mark "MOGEN DAVID." We are unable to find a single reference to the container itself. Prominently displayed on the wine-filled container in every instance is "MOGEN DAVID WINE." The board noted, as do we, the reference to "Package Personality" in the publications "Wines & Vines" and "Spirits." The reference is not to the bottle itself but to the complete package which consists of the container, the prominently displayed label, and the cellulose band at the top of the bottle with the words "MOGEN DAVID" and the figure of a star embracing the letters "MD."

We agree with the board that the affidavits submitted by appellant leave much to be desired in the way of substantial proof that the container itself had run the gamut of acquiring a secondary meaning. The approximately fifty affiants, customers of appellant, located generally throughout the United States, executed affidavits similar in language and purport which had been prepared and submitted by appellant. In substance, they amounted to hardly more than a carte blanche approval of that which had been formulated by a party naturally and understandably desirous of serving its own interest. These affidavits contained the statement:

That, to the best of my knowledge and belief, up until only a relatively short time ago, the only wines which were sold in decanter bottles having the shape or substantially the shape of the current decanter bottle in which Mogen David Wines are sold were wines bottled and sold by the concern which bottles and sell[s] Mogen David Wines.

We do not consider the board's evaluation of the evidentiary efficacy of these affidavits to be in deprecation of the veracity of affiants. The board reasoned that the obvious inference from the statement is that others "are or had been selling wines in decanters similar to that of" appellant and that when such use first began is not ascertainable from the vagueness and ambiguity of the phrase "until only a relatively short time ago." It would seem reasonable to assume that those affiants engaged in the retail sale of wines could and would have indicated with some degree of particularity the time when usage by others came to their attention. In its assessment of the probative worth of these affidavits, we think the board was warranted in its observation that:

The phrase "until a short time ago" appears to have been tailored to meet the recollection of the affiants as a group rather than to reflect the memory of each individual, and this leads us to question whether this statement made by the affiants was truly their personal recollection and experience or was it merely something related to them by applicant.

Each affidavit contains the following statement or one in similar substance and purport:

When I saw the wine bottled and sold in bottles of the shape of the above-mentioned decanter, I associated said wines with just one company, and that company is the one which sold and sells Mogen David Wines.

As we have heretofore noted, the decanter in issue when displayed in advertisements, promotional literature as well as in the market place is embellished with a cellulose band at the neck of the bottle with the words "MOGEN DAVID" thereon and a label prominently featuring the trademark MOGEN DAVID. As far as the record shows from the advertisement and promotional material and point of sale display, affiants never saw the

decanter without the neck band or label or had called to their attention the allegedly unusual configuration of the decanter. We think.it reasonable to assume, therefore, as did the board, that the affiants' association of the decanter with appellant was predicated upon the impression imparted by the mark MOGEN DAVID and other descriptive material appearing thereon rather than by any distinctive characteristic of the container per se.

The board reasoned that inasmuch as the decanter in issue, unlike the "PINCH" whiskey bottle, is not susceptible to verbal description, it is more than likely that appellant's wine would be called for and requested by the trademark MOGEN DAVID.

On the basis of the facts of record here presented, we are in agreement with the board that:

> Under such circumstances and since most of the assertedly distinctive features of applicant's decanter are somewhat obscured or hidden when it is filled with wine and adorned with the neck band and label, it is our opinion that the average purchaser is likely to recognize and identify applicant's wine by the written matter and pictorial representations prominently displayed on the label and neck band rather than on the configuration of the rather prosaic bottle, pre se.

Accordingly, we are not persuaded on the record herein that the decanter bottle creates a commercial impression separate and apart from the word marks appearing thereon and serves, in and of itself, as an indication of origin for applicant's wine.

The board's decision refusing registration is affirmed.

Affirmed.

---

1. Other comments are expressed in the following articles: Derenberg, The Eighteenth Year of Administration of the Lanham Trademark Act of 1946, 55 Trademark Rep. 609 (1965); Zelnick, Registrations of Configurations of Goods and Containers in the Light of the Sears and

SMITH, Judge (concurring).

I agree with the majority's conclusion that our previous decision in In re Mogen David Wine Corp., 328 F.2d 925, 51 CCPA 1260, should be adhered to. Thus the existence of a design patent at one time does *not* automatically preclude appellant's right to register a device on the Principal Register.

The solicitor, however, in a very extensive brief filed in the present appeal argues that our previous decision is "erroneous" in view of the Supreme Court's decisions in Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661, and Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669.

In disagreeing with the solicitor on this issue, the majority apparently rests on the reasoning previously advanced in the *Mogen David* opinion. Since our prior decision did not expressly consider *Sears* and *Compco*, which were decided at about the time our previous decision was released, I would like to state my views. The Supreme Court in the *Sears* and *Compco* cases considered that both presented the same issue for decision, i. e., "whether the use of a state unfair competition law to give relief against the copying of an unpatented industrial design conflicts with the federal patent laws." *Compco*, supra, 376 U.S. at 234, 84 S.Ct. at 780. It held, in both cases, that a conflict existed. The decisions were not concerned with federal trademark law although Professor Derenberg has stated there is "much language, in Mr. Justice Black's sweeping opinions, which cannot be easily harmonized with" certain portions of the opinion in *Mogen David*. 54 Trademark Rep. 660, 665 (1964).[1]

Very little is said in either the *Sears* or the *Compco* opinion concerning trade-

Compco Decisions, 55 Trademark Rep. 933 (1965); 53 Geo. L.J. 520 (1965); 55 Trademark Rep. 1032 (1965). See also Dulin, Statutory Design-Rights: Solution to the Unfair Competition of Piracy, 56 Trademark Rep. 158, 171 (1966). See infra, fn. 3.

marks. While the court did set forth the boundaries between federal patent laws and state unfair competition law, it is my conclusion that the Supreme Court did not purport to consider or decide the boundaries between federal patent law and federal trademark law.

Do the *Sears* and *Compco* cases indicate that there is a potential conflict between federal patent laws and federal trademark laws? I think not. Congress, in 35 U.S.C. § 171, provided that the inventor of a "new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements" of title 35. Congress provided, in the Trademark Act of 1946, section (1) (15 U.S.C. § 1051), that "[t]he owner of a trademark used in commerce may register his trade-mark under this Act on the principal register". Congress also stated, in section 45 (15 U.S.C. § 1127), that "The term 'trade-mark' includes any word, name, symbol or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." Further, "No trade-mark * * * shall be refused registration on the principal register on account of its nature" unless it is barred from registration under section 2 (15 U.S.C. § 1052).

The purpose of federal design patent laws is to encourage the creation of ornamental designs. The inventor receives, for a limited period, a federal right to exclude others from making, using, or selling the patented design throughout the United States. Upon expiration of the design patent this federal right no longer exists. Thus the inventor loses this exclusive right or interest.

Federal trademark laws, independent in origin from design patent law, have the dual purpose of protecting both the trademark owner and the public from confusion, mistake and deception. The public interest under the federal trademark laws has two aspects. In addition to protection from confusion, mistake and deception, the public, which includes competitors of the owner of a trademark, has an interest in the free use of words, names, symbols, devices or combination thereof which do not serve as trademarks.

Thus substantial public and private interests exist in both federal design law and trademark law. It seems to me that the heart of the controversy here is the *duration* of these interests. Federal design law provides for a limited period as to the inventor, which has been set by Congress. Federal trademark law, however, provides for the grant of rights to the trademark owner for an indefinite time period. Absent certain abuses by a trademark owner and assuming use in a trademark sense, the duration of a trademark depends on public recognition that the trademark identifies the user's goods and distinguishes them from the goods of others. Trademark law is replete with instances where the public has both "created" and "destroyed" the trademark rights which are subject to registration, and this has been done *independently* of any action or inaction by the trademark owner. Thus Congress has stated, in effect, that interests in certain designs are created and protected independently of any public recognition or acceptance of the design and that interests in the trademarks recognized by the public will be protected only for as long as the public recognizes that interest. See 15 U.S.C. § 1064.

In challenging our previous decision in *Mogen David* as being erroneous, as a matter of law, the solicitor argues that certain considerations are irrelevant. Thus we may assume that the shape of the container identifies that company's goods and distinguishes them to the public from those manufactured or sold by others. We may also assume that if the container was used by others for the sale of *those* goods, confusion, mistake and deception to the public would result.

I would like to focus at this point on what appellant seeks to register. It is a particular container shape for "KOSHER AND KOSHER TYPE WINES," amended at the examiner's suggestion, to

"WINES." Thus all appellant asserts is the right to register the shape of the container as a trademark for its wines for the reason that it serves to identify its wines and distinguish them from those of others. In no sense is there any assertion of an interest in the container shape per se for all uses. Comparing design and trademark law,[2] federal design law did give appellant a limited right to exclude others concerning the container shape, regardless of the goods associated with the container and any public recognition or acceptance of the design, while federal trademark law would yield only the following:

Sec. 32(1) (15 U.S.C. § 1114(1)). Remedies—Infringement

Any person who shall, without the consent of the registrant—

> (a) *use in commerce* any *reproduction, counterfeit, copy, or colorable imitation* of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause *confusion,* or to cause *mistake,* or to *deceive;* or

> (b) *reproduce, counterfeit, copy, or colorably imitate* a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon *or in connection with* the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause *confusion,* or to cause *mistake,* or to *deceive;*

shall be liable in a civil action by the registrant for the remedies hereinafter provided * * * [Emphasis added.]

Thus appellant seeks protection for what it asserts amounts only to the public acceptance of its container shape as a trademark for wines.

The solicitor's rather extensive brief arbitrarily decides that this appeal involves federal patent rights. From this arbitrary premise, it proceeds to a consideration of the patent statutes and then to a host of cases involving patents. The general conclusion extracted from this conglomeration is that *all* the patentee's interests expire after the patent term provided by Congress. Therefore appellant can have no other interest of any kind in the container shape. And as if to impress upon us the consequences of our decision, the solicitor's brief contains one recurring allegation: Appellant here seeks "a potentially perpetual monopoly," and a "perpetual patent." Whatever the meaning intended by these terms, it must be repeated that what appellant seeks here is nothing more than a federal registration of a particular container shape because it allegedly serves as a valid trademark for wine, i. e., a continuing legal right to prevent others from applying that trademark to similar goods in commerce and creating for the public an area of confusion, mistake and deception as to the source or origin of the goods so identified.

---

2. We stated, in In re Deister Concentrator Co., 289 F.2d 496, 500, 48 CCPA 952, 962:

 * * * the only significance of the existence of an expired patent on the article copied is that it adds another reason for saying that the public has the right to copy it, it being basic to the patent system that the public may copy when the term of a patent comes to an end, with certain exceptions. *However, the right to copy is not derived in any way from the patent law; it is a right which inheres in the public under the general law except to the extent the patent law may remove it.* The same is true of copyrights. *When a temporary incursion on the public right ends, the public right remains. No new right is born.* [Emphasis added.]

Concerning trademarks, the public interest in copying yields to the public interest of preventing confusion, mistake and deception in commerce independently of any benefits that may accrue to the trademark owner.

The consequences of the reasoning urged by the solicitor would be to place the federal patent law and the federal trademark law in direct conflict. In fact the solicitor implies that a novel forfeiture doctrine exists, i. e., that one who *seeks* design patent protection, whether successful or not, forfeits all future trademark rights, both under the federal law as well as at common law. Trademark rights depend upon public acceptance and recognition, not upon what applications for federal patents have been made or who made them.

It seems to me that there is a public interest in trademarks manifested in the prevention of confusion, mistake and deception in the sale of goods. Congress has provided, by authority of the commerce clause of the Constitution, for federal recognition of this public interest when its existence has been proven. Yet the regulation of commerce as provided by Congress through federal trademark laws to prevent confusion, mistake and deception is in effect ignored by the solicitor. It seems to me that the Supreme Court in *Sears* and *Compco*, in expressly relying on the federal policy underlying patents, would require and must yet face the task, should it arise, of also considering the federal policy underlying trademarks.[3]

The solicitor's brief portrays appellant as attempting to extract something from the "public domain," contrary to federal law. If the public recognizes and accepts appellant's container shape in a trademark sense, appellant seeks only federal recognition of that public interest. It is the public that is protected. Of course this may operate against competitors and potential competitors who wish to trade on appellant's goodwill by copying the container shape for the sale of wines. I see no valid interest in permitting this very minute class to create confusion, mistake or deception by copying, merely because the thing copied was once patented or sought to be patented

under federal design law. Copiers should not be given rights in derogation of the public interest. Federal trademark laws take nothing from the "public domain;" rather, they give federal recognition to existing interests, both private and public. Society's acceptance of law and order depends on sound decisions. It will not be advanced by holding that confusion, mistake and deception are *necessary* in order to prevent appellant from allegedly extracting something from the "public domain."

Perhaps the solicitor's argument is that the public has the "right" to be confused, mistaken or deceived, or that recognizing the narrow interest of trademark owners in preventing confusion, mistake and deception is so great an "evil" that sacrificing the public interest is a small price to pay. It seems to me that confusion in commerce would be an unnecessary and great price to pay.

I have purposely avoided use of the terms "functional" and "nonfunctional," not presented in this case. Instead I have relied heavily on a general consideration of the basic interests involved in this argument. I conclude from these considerations that the federal patent laws and trademark laws are not in conflict. Appellant is thus not barred from seeking federal protection *for what the public recognizes as a trademark.*

As to whether appellant has proven that the container shape serves as a trademark, I agree with the conclusions of the court. It does not seem to me that the evidence submitted is either of such character or weight as to sustain appellant's burden of proof on this issue. I do not rest my conclusions on the form of affidavit used. It seems to me that a much larger cross section of public impression needs to be shown. Certainly the import of the alleged mark on the dealer and consumer, with emphasis on the latter as to the impression of the *container shape,* must be shown. I also

3. See Lunsford, The Protection of Packages and Containers, 56 Trademark Rep. 567 (1966); compare Leeds, The Impact of Sears and Compco, 55 Trademark Rep. 188 (1965). See also the authorities cited, supra, fn. 1.

find no fault with the fact that the container is always associated in commerce with the trademark "Mogen David" on a label affixed to the container. Such marking is *required* by provision of the federal alcoholic beverage laws. Thus the issue here comes down simply to a question of whether appellant has met its burden of proof to establish that its *container shape* did in fact identify its wines.[4] In this regard I find the evidence insufficient to show that the container shape operates in a trademark sense to identify and distinguish appellant's wines from those of others.

I therefore concur in the result reached by the majority.

4. See Lunsford, *supra*, fn. 3, 56 Trademark Rep. at 572–573, for a review of instances where containers have been registered on the Principal Register.