**TIME MECHANISMS, INC., Plaintiff,**

v.

**QONAAR CORPORATION, Defendant.**

**QONAAR CORPORATION, Plaintiff,**

v.

**TIME MECHANISMS, INC., and Henry R. Stiffel, Defendants.**

**Civ. Nos. 1688–73, 1789–73 and 75–896.**

United States District Court,
D. New Jersey.

Oct. 27, 1976.

James P. Ryther, Melvin M. Goldenberg, McDougall, Hersh & Scott, Chicago, Ill.

Garrett E. Brown, Jr., Stryker, Tams & Dill, Newark, N. J., for plaintiff.

Howard Sommers, Sommers & Sommers, Hackensack, N. J., for defendant.

## OPINION

LACEY, District Judge.

This case, a consolidation of three civil actions involving numerous questions of alleged patent and trademark infringement, unfair competition and antitrust violations, was tried in part before this court without a jury from May 17 to May 21, 1976. The antitrust aspects of the case, to the extent that they have not been settled by reason of stipulations, judgments and orders heretofore entered, were severed, and, along with the question of damages, if any, will be tried separately.

A consent judgment was entered into by the parties on May 21, 1976, settling the issues of validity and infringement on 14 of

the 17 patent infringement claims; and a license agreement was entered into with respect to the remaining three patent claims, which were then dismissed by consent.

This opinion deals with those remaining issues which were finally tried, namely, Qonaar Corporation's [Qonaar] claims of trademark infringement and unfair competition; Qonaar's claim that Time Mechanisms, Inc. [Time] and Henry R. Stiffel [Stiffel] were in contempt of court; attorneys fees; and an unfair competition counterclaim asserted by Time against Qonaar.

Time is a New Jersey corporation with a place of business in New Jersey; Stiffel is a New Jersey resident; and Qonaar is a Delaware corporation with its principal place of business in Illinois.

Qonaar, a producer of parking meters, seeks to enjoin Time and Stiffel from manufacturing and . selling parking meters shaped like the meters produced by Qonaar, i. e., its Duncan meter, produced by Duncan Industries, Division of Qonaar. Qonaar claims that Time, in the marketing of remanufactured parking meters and new and remanufactured parts, prominently displays Qonaar's widely. known trademarks and illustrations in certain of its advertising without indicating that Time is not associated with Qonaar. Qonaar charges Time not only with trademark infringement. It also charges Time with unfair competition, in that its parking meter configuration is designed to be confusingly similar to Qonaar's, in order to deceive and mislead the parking meter market into believing that the meters are Qonaar's.

Qonaar asserts trademark rights in its designations "Duncan," "V.I.P.," "Duplex," "Model 50" and "Model 60" and, as well, in the characteristic shape of the top portion of its parking meters. This shape comprises essentially the rounded upper portion of the meter, which spans the time viewing area, and then continues downward on both sides of the meter beyond the viewing area and into the side walls of the meter housing. The witness Mohr referred to this shape as the "ice cream cone shaped top"

(Transcript at 147), and it is embodied in the Duncan Model 60, Duplex and V.I.P. meters. Qonaar obtained a mechanical patent on its parking meter configuration (United States Mechanical Patent No. 2,882,682, for "Weather-Tight Enclosure") issued on February 11, 1958 to L. C. Sollenburger, PX–1A, which expired on February 11, 1975, and a design patent (United States Design Patent No. 162,698 for "Parking Meter Casing") issued on March 27, 1951 to J. Teague, DZ–27, which expired on March 27, 1965.

Qonaar, in support of its trademark infringement claim, argues that the "ice cream cone shaped top" of its meters, while not protected by federal trademark registration, has acquired common law trademark status, and is thus entitled to protection because it is distinctive, nonfunctional and has acquired secondary meaning. With respect to its unfair competition claim, it asserts the same arguments, adding the element of Time's alleged "palming off."

Time's argument in opposition to Qonaar's contentions is two-fold: that Qonaar's parking meter configuration is not a federally registered trademark and therefore is not protectable, under the holdings in *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and *Compco Corp. v. Day-Brite Lighting,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964); and alternatively, that even if common law trademarks are protectable, notwithstanding *Sears* and *Compco,* Qonaar has not acquired such. With respect to the unfair competition claim, Time contends that it clearly labels its parking meters and advertising literature as its own; therefore, it is not "palming off" and no likelihood of confusion exists between the two product lines.

I turn to Time's initial argument that, in the absence of a federally registered trademark, *Sears* and *Compco* bar Qonaar's claim for protection of its parking meter configuration.

In *Sears, supra,* the issue before the Court was whether a state unfair competition law "can, consistently with the federal

patent laws, impose liability for or prohibit the copying of an article which is protected by neither a federal patent nor a copyright." *Id.* 376 U.S. at 225, 84 S.Ct. at 786. Stiffel obtained design and mechanical patents on a pole lamp which had been successfully marketed. Sears then marketed its pole lamps, which were substantially identical to Stiffel's, at a lower price. Stiffel sued Sears for patent infringement and unfair competition. Evidence revealed that identifying tags were not attached to the Sears lamps although Sears labels appeared on their delivery cartons, that customers had asked Stiffel whether its lamps differed from those of Sears, and that customers who had bought Stiffel lamps had complained to Stiffel on learning that Sears was selling a substantially identical yet less expensive lamp. The district court found the patents invalid but held Sears guilty of unfair competition. No review was sought of the court's ruling on the invalidity of the patents.

■ The Supreme Court, taking a broad preemption approach with respect to the unfair competition claim, found that "(a)n unpatentable article, like an article on which the patent has expired, is in the public domain and may be made and sold by whoever chooses to do so." *Id.* at 231, 84 S.Ct. at 789. A state may not, therefore, when an article is not patented or copyrighted, prohibit the copying of the article itself or award damages for such copying. *Id.* at 232–33, 84 S.Ct. 784. The Court permitted an exception to its rule, however:

> [A] State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods.

*Id.* at 232, 84 S.Ct. at 789.

■ Similarly, in *Compco Corp. v. Day-Brite Lighting, supra,* which involved the imitation of a reflector on fluorescent lighting fixtures, the Court held that the copying of an unpatented industrial design, even when the trial court found that the configuration had acquired a "secondary meaning," cannot be forbidden under state unfair competition laws. The lower court had invalidated the design patent of Day-Brite but had found a likelihood of confusion to exist because of the similarity of the fixtures; Compco was adjudged guilty, therefore, of unfair competition. Again the Supreme Court allowed that:

> A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original.

*Id.* 376 U.S. at 238, 84 S.Ct. at 782. It narrowly limited this exception, however, precluding copied articles which had acquired, for example, "nonfunctional" designs or "secondary meaning" or which might cause confusion among purchasers as to the maker, from protection. These factors may be relevant evidence in the application of state law requiring such precautions as labeling but they cannot furnish a basis for prohibiting the acts of copying and selling. *Id.*

Qonaar, responding to Time, argues that *Sears* and *Compco* are inapplicable in the present context, in that here, unlike the circumstances in those cases, the validity of a trademark, rather than a patent, is in issue and that the Duncan meter ice cream cone shape has achieved common law trademark status and is therefore entitled to protection.

Qonaar's position finds expression in *Application of Mogen David Wine Corp.,* 372 F.2d 539, 54 CCPA 1086 (1967). There, on appeal from a denial of an application to grant the registration under the Lanham Act, 15 U.S.C. § 1052, of a configuration of the Mogen David decanter bottle on the Principal Register, the court affirmed the findings of the Trademark Trial and Appeal Board that there had been no promotional

advertisement or display of the configuration itself without a band at the neck of the bottle with the name prominently featured and that the decanter itself had not acquired a secondary meaning so as to function as a trademark. Judge Smith, in a concurring opinion, analyzed the application of *Sears* and *Compco* to trademark cases. In his view the Supreme Court "did not purport to consider or decide the boundaries between federal patent law and federal trademark law." *Id.* at 543. Differentiating the purposes of federal design patent law, which is to encourage the creation of ornamental designs and to give the creator the right to exclude others from making, using or selling the design, from the dual purpose of federal trademark laws of protecting both the trademark owner and the public from mistake, confusion and deception, he found the "heart of the controversy" to be the duration of these interests. *Id.* Federal patent law provides protection to the inventor for a limited period of time set by Congress, whereas federal trademark law provides the grant of rights to the trademark owner for an indefinite period, the duration of which depends on public recognition that the trademark identifies the user's goods and distinguishes them from the goods of others. *Id. See* 15 U.S.C. § 1064. The argument of the applicant, accepted by Judge Smith, was that if the public recognizes and accepts Mogen David's container shape in a trademark sense, it should be entitled to federal recognition; and to deny this is to place federal patent law and federal trademark law in conflict. Notwithstanding his approval of this reasoning, Judge Smith joined with the majority because he felt that the applicant's proof had not established that its container shape did in fact identify its wines. *Id.* at 545–46.

The majority did not deal with *Sears* and *Compco,* relying instead on its earlier opinion in the same case—*Application of Mogen David Wine Corp.,* 328 F.2d 925, 51 CCPA 1260 (1964). There it was held that the applicant was not precluded from obtaining the trademark registration of the configuration of its decanter during the life of a design patent covering the same bottle. The case was remanded to the Trademark Trial and Appeal Board because a question of fact existed as to whether there was sufficient evidence to establish that the design functioned as a trademark to indicate origin. *Id.* at 932. The court there accepted the argument of the applicant that " 'patent protection does not, in principle, exclude trademark protection or what is tantamount thereto, namely, protection under the law relating to unfair competition where secondary meaning has been established.' " *Id.* at 929. It stated:

> The underlying purpose and the essence of patent rights are separate and distinct from those appertaining to trademarks. No right accruing from the one is dependent upon or conditioned by any right concomitant to the other. The longevity of the exclusivity of one is limited by law while the other may be extended in perpetuity.

*Id.* at 929.

In light of its position, it is understandable why the Court of Customs and Patent Appeals has found it unnecessary to consider the applicability of *Sears* and *Compco* in trademark matters. *But see* Note, 53 Georgetown L.J. 520 (1965). In *Mine Safety Appliance Corp. v. Electric Storage Battery Co.,* 405 F.2d 901, 902 n.2 (Cust. & Pat.App. 1969), where the court affirmed the denial of an application to register a trademark on the Principal Register, Judge Smith's concurring opinion was cited in response to the arguments of counsel of the application of *Sears* and *Compco.*

The Ninth Circuit in *Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp.,* 502 F.2d 802, 807 (1974), indicated its agreement with the above rationale by noting "in passing" that Judge Smith in *Mogen David, supra,* put *Sears* and *Compco* "in proper perspective" in that they have no application to cases where the validity of a trademark is in issue. *Id.* at 807.

I am in agreement with this analysis of the application of *Sears* and *Compco* to trademark cases and conclude that this rationale applies to the case at bar.

In *Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210 (8th Cir. 1976), the court found that the exterior design of plaintiff's semitrailer, which had nonfunctional parts, had acquired a secondary meaning in the market place and defendant had misappropriated the design in its semitrailer. In analyzing the case law, it read the language in *Compco, supra,* 376 U.S. at 238, 84 S.Ct. 779, where the Court found that neither nonfunctionality nor secondary meaning furnished a basis for imposing liability on a copier, as dictum. 536 F.2d at 1214. The focus of both *Sears* and *Compco,* it held, was the Supremacy Clause of the Constitution—whether state law could extend the effective term of patent protection granted by federal statutes. *Id.* at 1214–15. *Accord Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg.,* 510 F.2d 1004, 1013 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); *Flexitized, Inc. v. National Flexitized Corp.,* 335 F.2d 774, 781 n. 4 (2d Cir. 1964), *cert. denied,* 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965); *Field Enterprises Educational Corp. v. Cove Industries, Inc.,* 297 F.Supp. 989, 995–96 (E.D. N.Y.1969); *Marcal Paper Mills, Inc. v. Scott Paper Co.,* 290 F.Supp. 43, 48–49 (D.N.J. 1968); J. Zammit, The Ghost of Sears-Compco Is Finally Laid to Rest (Or Is It?), 3 Hofstra L.Rev. 37 (1975). That issue was not before the Eighth Circuit and is not before this court. That court reasoned that the protection accorded to a design under the patent laws and that " 'accorded to what amounts to a trademark under the common law doctrine of secondary meaning are separate and distinct.' " 536 F.2d at 1215 (quoting from *Application of Mogen David Wine Corp., supra,* at 929). The rights which are conferred by law in one in no way exclude the rights conferred in the other. 536 F.2d at 1215. The Lanham Act provides for the registration, and not the creation, of trademark rights; it assumes the pre-existence of a trademark. Trademark rights arise from use and not registration. *Mine Safety Appliances v. Electric Storage Battery Co., supra,* at 904.

Historically, the exclusive right to a trademark rested upon appropriation and use. In *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713 (1916), the Supreme Court held that a prior user has exclusivity only within the geographical area of use, and that a subsequent good faith user without notice of prior use was entitled to the concurrent use in its own market, provided that it is remote from the market of the prior user. Neither party in *Hanover* had a registered mark. It is well settled that the Lanham Act did not alter this aspect of prior law. *See In re Beatrice Foods Co.,* 429 F.2d 466, 472 (Cust. & Pat.App.1970); *American Foods, Inc. v. Golden Flake, Inc.,* 312 F.2d 619 (5th Cir. 1963); *Dawn Donut Co. v. Hart's Food Stores, Inc.,* 267 F.2d 358 (2d Cir. 1959). The ownership of a federal trademark registration simply supplements the rights accorded at common law which stem from the ownership of a trademark. *In re Beatrice Foods Co., supra,* 429 F.2d at 472. These added protections include the right to invoke the jurisdiction of the federal courts, 15 U.S.C. § 1121; the right to rely on certain evidentiary presumptions, 15 U.S.C. § 1115; and the constructive notice provision of the Lanham Act, 15 U.S.C. § 1072, which deprives future users of the registered mark of the defense of innocent appropriation. *Id.*

Qonaar claims for its meter configuration common law trademark status in that it is nonfunctional, distinctive and has acquired secondary meaning.

The Lanham Act expressly provides that the configuration of goods is to be treated as a mark for purposes of the Principal and Supplemental Registers if it is distinctive and nonfunctional or, under section 2(f) of the Act, has obtained secondary meaning. Some marks are registrable, without regard to secondary meaning by reason of their unique designation of origin. 4 Callman, Unfair Competition, Trademarks and Monopolies, § 98.4(d), at 681 (3d ed.). The term "mark" includes "any trademark, service mark, collective mark or certification mark entitled to registration under this

Act whether registered or not." *Id.* at 681–82.

If a trademark is not inherently distinctive, it will not be a trademark which the owner may register under section 1 of the Lanham Act. 15 U.S.C. § 1051. *Application of Soccer Sport Supply Co., Inc.,* 507 F.2d 1400, 1402 (Cust. & Pat.App.1975).

The factual data necessary to support secondary meaning are similar to those used to support a finding of distinctiveness. Distinctiveness, however, stresses the popularity and acceptance of the mark, while secondary meaning rests upon a showing that the primary significance of the mark in the minds of consumers is its designating not the product but the producer. *Alfred Dunhill of London, Inc. v. Kasser Distillers Products Corp.,* 350 F.Supp. 1341, 1357 (E.D. Pa.1972), *aff'd,* 480 F.2d 917 (3d Cir. 1973).

In *Application of G. LeBlanc Corp.,* 429 F.2d 989 (Cust. & Pat.App.1970), the court granted the registration, on the Principal Register, of a configuration formed by locating a medallion on the brace of the trumpet as a trademark for trumpets. It found the configuration "unique," it appearing that "no other manufacturer include(d) any sort of discernible enlargement on the brace adjacent [to] the trumpet's main tuning slide." *Id.* at 992.

In order to determine whether a trademark has acquired a secondary meaning the following factors should be considered:

(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between that name or mark and a particular product or venture.

3 Callman, *supra,* § 77.3, at 349.

Qonaar's position, as to both distinctiveness and secondary meaning, is that it advertises its Duncan configuration so widely and prominently that its consuming public will associate the configuration with Qonaar. In its "free pay" advertisement (*see* PX 31B), only the upper housing of its meter is shown. It is allegedly impossible to tell whether the housing in that advertisement is a Model 60, a V.I.P. or a Duplex. Even in advertisements for its security systems (*see* PX 31B), the upper portion of the meter is shown even though the parking meters are not the item being promoted. Mr. Sabin, the Vice President of Marketing of Duncan Industries, Division of Qonaar, indicated that the Duncan meter has been used "as a symbol of easy recognition." Specifically the meter was used by Life Magazine "to merchandise [its] own book." Transcript at 42. It was also used by Sears Roebuck in a television commercial where

they wanted to identify the fact that under extremely cold weather for a specific period of time the Sears-Roebuck battery would operate where the other batteries failed. And they used our meter to cover the span of time.

And my assumption is that the agency and Sears felt comfortable that a Duncan parking meter, illustrating a lapse of time, would be accepted by the listening audience as a bona fide situation.

*Id.*

Mr. Mohr, supervisor of maintenance and collections for Metuchen, New Jersey, whose municipal duties have led to his being familiar with the parking meter market, recognized the meter illustrations shown to him as Duncan meters. Transcript at 142, 153–54.

Mr. May, Vice President of Engineering at Duncan Industries, also identified an illustration of a Duncan meter. He stated that to his knowledge no other company, other than Time, produces a meter similar to that of Duncan. *Id.* at 223.

Even Mr. Stiffel, Time's President, recognized positively the illustration of the Duncan meter.

Q. Mr. Stiffel, I'm handing you a copy of what has been marked as Plaintiff's Exhibit 31–F.

Now, am I correct that you would recognize the picture in that exhibit as a Duncan parking meter?

A. Yes, it could be.

Q. Well, bearing in mind the time frame of the exhibit, January 10, 1964, would that cause you to be more positive about your answer.

A. Oh, yes.

Q. It definitely is a Duncan parking meter?

A. Yes.

Q. Now, I believe yesterday your counsel in examining Mr. Mohr brought out that you really can't tell from looking at the exhibit, 31–F, whether it is a Duncan Model 60 or a Duncan Model V.I.P. Am I correct?

A. Yes, you are correct.

Q. And actually it could also be one-half of a Duncan duplex?

A. Yes, in addition, it could be.

Q. Now, on Exhibit 31–F, Mr. Stiffel, you do not find any reference to the name "Duncan," do you?

A. No, there is not.

Q. Now, in other words, you are identifying the meter because of the characteristic shape that you see there; is that correct?

A. That is correct.

Transcript at 161–62. *See also id.* at 173.

■ I find the above testimony convincing evidence that the Duncan meter configuration has achieved trademark status. The Duncan meter has been in use for over twenty years. *Id.* at 18. It is used extensively in Qonaar's advertising. Qonaar has demonstrated that it advertises its meter configuration alone so that the public may easily recognize it as a Duncan meter. A member of its buying public has stated he recognized the meter shown to him. Even Mr. Stiffel expressed his immediate recognition of the exhibit shown him without label as a Duncan meter. Time introduced nothing to rebut this persuasive testimony. Its reliance upon *Mogen David, supra,* is misplaced. As indicated, there the court denied registration, finding that the container always appeared with the label "Mogen David." The court was "not persuaded on the record . . . that the decanter bottles created [d] a commercial impression separate and apart from the word marks

appearing thereon and serve[d], in and of itself, as an indication of origin for applicant's wine." 372 F.2d at 542.

These facts are readily distinguishable from those in the case at bar, where, I find, the testimony clearly showed identification without labeling.

In light of the above-mentioned elements, I therefore find that the Duncan meter configuration is distinctive and has acquired secondary meaning.

■ Qonaar asserts that its design is nonfunctional. I so find. It is well settled that a configuration of an article cannot be registered as a trademark if the purpose of the configuration is to contribute functional advantages to the article which is embodied in it. *See Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 119–20, 59 S.Ct. 109, 83 L.Ed. 73 (1938); *Alan Wood Steel Co. v. Watson,* 150 F.Supp. 861 (D.D.C.1957). In support of its contention, Qonaar points to the fact that no competitor (other than Time) utilizes the cone-shaped configuration. Transcript at 30–31. Of equal significance, Mr. May stated to the court on direct examination, and I accept his uncontroverted testimony as true, that the parking meter mechanism can be contained by housings of many different configurations. *Id.* at 223–24.

Time points to the holding in *In re Honeywell, Inc.,* 532 F.2d 180 (Cust. & Pat. App.1976), where the court denied the registration of a trademark for a portion of a configuration of a thermostat because those characteristics were "functional or utilitarian features of thermostat covers per se." *Id.* at 182. It relied for its holding on the decision of the Trademark Trial and Appeal Board which stated:

The fact that thermostat covers may be produced in other forms or shapes does not and cannot detract from the functional character of the configuration here involved. In sum, the overall configuration of applicant's thermostat cover, as presented for registration, is essentially functional in character and, as such, it does not possess the necessary attributes

of a proprietary trademark necessary for registration.

*Id. See also Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp., supra,* at 802. The facts in *Qonaar,* however, are dissimilar. No other parking meter company has utilized this form of housing. The number of different designs only point to the various other possibilities of form. I do not find the cone-shaped configuration of the Duncan meter so functionally oriented as to deny Qonaar the private right to use it exclusively. Although the ice cream cone shape may have some utilitarian function, I do not regard it as primarily functional. *See Application of World's Finest Chocolate, Inc.,* 474 F.2d 1012, 1014 (Cust. & Pat. App.1973).

Having found that Qonaar's cone-shaped meter configuration has acquired trademark status, I must now determine whether Time has infringed Qonaar's trademark through the manufacture of any of its meters.

Time, for the first time in 1968, or 1969, began manufacturing a meter housing construction for the lower portion of the meter. In 1973, however, it adopted the upper structure of the Duncan meter, retaining its own lower portion. It then introduced the "American Eagle" which is identical to Qonaar's Model 60 in shape, color, lettering and numbering.

There is no doubt that the meters are identical, as stated by Mr. Stiffel. Transcript at 124. Time's advertisement, in addition, is designed to confuse the public. In one particular advertisement, for example, it states:

> YOU CAN GET THESE DUNCAN 60'S
> WHICH HAVE BEEN COMPLETELY
> RE–MANUFACTURED BY
> THE AMERICAN PARKING METER CO.
> at the UNBELIEVABLY LOW PRICE OF
> $39.95.
> AMERICAN PARKING METER COMPANY,
> a division of TIME MECHANISMS INC.

Post-Trial Brief of Qonaar, Exhibit B. Another brochure for the American Eagle states that "(t)he theory of this mechanism has been proven successful for over seventeen years." Transcript at 119. This is a reference to the Duncan Meter and not the American Eagle.

It is apparent from this set of facts that Time is infringing Qonaar's trademark by its utilization of the cone-shaped configuration or upper housing of its meter. The usual result of trademark infringement is the passing off of the goods of one as those of another. 4 Callman, *supra,* § 84.1, at 935. This is effected, as in the present case, by the confusion of goods. *Id.* One of Time's meters, the American Eagle, is identical to the Duncan meter. Others utilize merely the upper portion. I consider both instances examples of infringement. Actual confusion need not be shown where, as here, the products are similar and/or identical and there is manifest an intent to copy and infringe, and the likelihood of confusion exists. *Aloe Creme Laboratories, Inc. v. Aloe 99 Inc.,* 485 F.2d 1241 (Cust. & Pat.App.1973); *Taussig v. Wellington Fund, Inc.,* 187 F.Supp. 179 (D.Del.1960). Moreover, there is evidence of actual confusion which I accept as credible. Mr. Albert Adams, a service employee of Duncan, described instances where he had been asked by customers if Duncan had sold out to Time or had changed its name and address. Transcript at 88–89, 97. Complaints made about Duncan parts, upon investigation, were actually made concerning Time goods. *Id.* at 89–92, 95–96. Mr. Sabin indicated other such instances. *See* Transcript at 47–53, 58–64, 64–69, 70, 72–73.

Time argues that its meters are labelled and its advertising clearly shows its own name. The advertisements and their manifest intent to confuse undercut its position. I find that Time wanted potential customers to believe it was associated in some way with Qonaar and the Duncan meter. Qonaar, therefore, is entitled to permanent injunctive relief based on its trademark infringement claim.

Qonaar's second claim is that of unfair competition. It asserts that Time's practices involve the trading on Qonaar's goodwill, passing off and pirating of trade.

I need not deal at great length with the claim of unfair competition. Having found a basis for trademark infringement with the additional element of the intent, on the part of Time, to confuse and "pass off" the products of Qonaar, notwithstanding the appearance of Time's name, the essential elements for the proof of unfair competition have been found to exist.

It has often been stated that the law of trademarks is only a part of the broader law of unfair competition. *See Hanover Star Milling Co. v. Metcalf, supra,* 240 U.S. at 413, 36 S.Ct. 357, 60 L.Ed. 713; *Campbell Soup Co. v. Armour & Co.,* 175 F.2d 795, 796 (3d Cir. 1949); *Corning Glass Works v. Jeannette Glass Co.,* 308 F.Supp. 1321, 1327 (S.D.N.Y.1970), *aff'd,* 432 F.2d 784 (2d Cir. 1970); *Baker v. Master Printers Union of New Jersey,* 34 F.Supp. 808, 812 (D.N.J. 1910). The distinction between trademark infringement and unfair competition claims has been stated as follows:

> Trade-mark infringement rests on a relatively narrow principle compared to unfair competition. The essential element of a trade-mark is the exclusive right of its owner to use a work or device to distinguish his product. On the other hand, a claim of unfair competition considers the total physical image given by the product and its name together. Thus unfair competition exists if the total impression of package size, shape, color, design and name upon the consumer will lead him to confuse the origin of the product. 1 Nims, Unfair Competition and Trade Marks § 1 (4th ed. 1947).

*Jean Patou, Inc. v. Jacquelin Cochran, Inc.,* 201 F.Supp. 861, 863 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir. 1963); *see also Exquisite Form Industries, Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 415 (S.D.N.Y.1974).

As I have stated recently in *Childhood Interests v. Sanitoy,* Civil Action 76–279 (D.N.J., June 14, 1976), I do not read *Sears* and *Compco* to bar the application of New Jersey law of unfair competition in trademark cases. Transcript of opinion at 5. *See also Flexitized, Inc. v. National Flexi-*

*tized Corp., supra,* at 781 n. 4; *Marcal Paper Mills, Inc. v. Scott Paper Co., supra,* at 48–49; *Columbia Broadcasting System, Inc. v. Melody Recordings, Inc.,* 134 N.J.Super. 368, 375, 341 A.2d 348 (App.Div.1975).

The essence of the law of unfair competition is fair play. *Q-Tips v. Johnson & Johnson,* 206 F.2d 144, 145 (3d Cir.), *cert. denied,* 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377 (1953); *Columbia Broadcasting System, Inc. v. Melody Recordings, Inc., supra,* 134 N.J.Super. at 376, 341 A.2d 348. When competition becomes deceptive, that conduct enters the sphere of unfair competition. The deciding factor then becomes whether a likelihood of confusion exists. In testing for a likelihood of confusion, the court should "disregard minutia of differences and look to the overall appearance of the package as seen by a potential purchaser." *Beech-Nut, Inc. v. Warner Lambert Co.,* 480 F.2d 801, 804 (2d Cir. 1973). Time's configuration is confusingly similar to that of Qonaar, particularly with respect to its American Eagle meter. I have already mentioned the incidents of confusion in the minds of Qonaar's customers. Additionally, Time's advertisements reflect an intent to deceive the meter-buying public. On the basis of these facts I find that there is a substantial likelihood of Qonaar suffering lost sales and an erosion of its goodwill unless Time is enjoined. I therefore grant the relief requested; and Time is permanently enjoined from utilizing the cone-shaped configuration of Qonaar and attempting to confuse the public as has been demonstrated.

Qonaar asserts that Time and Mr. Stiffel should be found in contempt of court in that it and he delayed the mailing of a letter ordered by the court on September 4, 1974 to be sent to all its customers or prospective customers. The letter was sent on September 23, 1974 by the use of bulk mailing. On the record before me, I see no basis for a finding of wilfullness on the part of Time or Mr. Stiffel. Accordingly, the motion to hold them in contempt of court is denied.

 Time's charge of unfair competition on the part of Qonaar for sending correspondence to potential customers of Time is without merit. Ample discretion rests with the trial judge enjoining and issuing damages in such a situation. *See Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183–84, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *Embassy Industries, Inc. v. Federal Boiler Co.,* 228 F.Supp. 780, 781 (D.N.J.1964). Time alleges no specific damage as a result of these letters. I find, after examining the record, briefs and memoranda before me, that Time is not entitled to relief on its unfair competition claim.

 Finally, Qonaar seeks recovery of litigation expenses, including attorneys fees, on its unfair competition claim and, pursuant to 35 U.S.C. §§ 285 and 288, on its patent infringement claim, under the "exceptional case" provision.

Section 285 provides that in patent cases "[t]he court in exceptional cases may award reasonable attorneys fees to the prevailing party." The awarding of attorneys fees under § 285 is "to prevent gross injustice in patent litigation and can be predicated upon fraud practiced upon the Patent Office or vexatious or unjustified litigation." *ADM Corp. v. Speedmaster Packaging Corp.,* 384 F.Supp. 1325, 1350 (D.N.J.1974), aff'd, 525 F.2d 662 (3d Cir. 1975). *See also Pennsylvania Crusher Co. v. Bethlehem Steel Co.,* 193 F.2d 445, 451 (3d Cir. 1951).

 The rule which has evolved in this country is that, absent an express statute or an enforceable contract, a successful litigant is not permitted to recover counsel fees as damages or as reimbursable costs. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717–21, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,* 407 F.2d 288 (9th Cir. 1969). The authority to award attorneys fees under § 285 is limited to the patent side of the case. If an action embodies both patent and nonpatent claims,

attorneys fees pursuant to § 285 cannot be allowed for the nonpatent claims. *ADM Corp. v. Speedmaster Packaging Corp., supra,* at 1350; *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp., supra,* at 297.

 The state unfair competition claim of Qonaar is before the court under principles of pendent jurisdiction under 28 U.S.C. § 1338(b). Qonaar cites New Jersey cases in support of its request for attorneys fees on unfair competition grounds. It is true that in a diversity action the court must apply state law in awarding attorneys fees. *See Alyeska Pipeline Co. v. Wilderness Society, supra,* 421 U.S. at 259 n. 31, 95 S.Ct. 1612; *Tryforos v. Icarian Development Co.,* 518 F.2d 1258, 1265 (7th Cir. 1975). This is not, however, a diversity case. Accordingly, Qonaar's request for attorneys fees on its unfair competition claim is denied on the basis of the principles expounded in *Alyeska.* Also denied is its request for attorneys fees based on its contempt claim.

 As to the attorneys fees on its patent claim, Qonaar argues that Time was aware of its valid patent rights when it copied Qonaar's product, yet waited until the morning of trial before it conceded infringement, forcing Qonaar to prepare for trial and incur substantial expenses. I find this insufficient as a basis for characterizing this claim as an exceptional case. An award of attorneys fees to the prevailing patentee is improper in the absence of gross injustice or fraud and where the issues fairly presented were difficult of solution. *Ellipse Corp. v. Ford Motor Co.,* 452 F.2d 163, 172 (7th Cir. 1971), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972). In *ADM Corp. v. Speedmaster Packaging Corp., supra,* at 664, the court having examined the record for signs of bad faith, fraud and misconduct, affirmed Judge Stern's finding that these necessary elements had not been proved. *Id.* On the record before me, I likewise find absent the requisite elements of bad faith, fraud and misconduct. Time's capitulation at the beginning of trial

aids its cause. Bearing in mind that attorneys fees under § 285 should be granted sparingly, I conclude that Qonaar is not entitled to an award of attorneys fees on its patent claims.