**UNITED VAN LINES, INC.**

v.

**AMERICAN HOLIDAY VAN LINES, INC.**

Civ. No. 3–79–322.

United States District Court,
E. D. Tennessee, N. D.

Dec. 18, 1979.

William C. Wilson, Knoxville, Tenn., John D. Pope, III, St. Louis, Mo., for plaintiff.

Geoffrey D. Kressin, Robert H. Watson, Jr., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

By this action, United Van Lines (United), a Missouri corporation, seeks injunctive relief and damages against Holiday Van Lines (Holiday), a Tennessee corporation, for alleged violations of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and the common law of unfair competition. In essence, United claims that because of the similarity of the respective "trade dresses" or logos of the two companies, Holiday is misrepresenting itself as associated with United, and that there is a likelihood of confusion between them in the product. Holiday denies both the misrepresentation and the confusion claims.

Jurisdiction is predicated on 28 U.S.C. § 1338(b). *Natcontainer Corp. v. Continental Can Co.*, 362 F.Supp. 1094 (D.C.N.Y. 1973). This memorandum shall constitute findings of fact and conclusions of law. Fed.R.Civ.Proc. 52(a).

## FACTS

This controversy centers around the respective "trade dresses" or logos of the parties. Both are "triple-stacked" (i. e., the name of the company is repeated three times and stacked one atop the other) with the lettering all in capitals at a slight slant to the right. The words "Van Lines" appear in upper- and lower-case letters, similarly slanted, immediately beneath the stack and beginning flush with the left margin. Where the logo appears on a company's vehicle, each is placed on a white background above the rear wheels, and a horizontal "racing stripe" extends around the trailer near the bottom. (Ex. 6 and 7).

But the similarities end there. The letters in the words "UNITED" are all of uniform height and are comprised of a series of narrow, horizontal, blue bars. The "racing stripe" is a double gold bar, with a wider bar underneath and flush with the bottom of the trailer.

Holiday employs a rust-colored "sunburst" to the left of the triple-stack. The left vertical bar of the top "H" extends above the stack, and the tail of each "Y" extends into the letter immediately below. The letters are not as large as those in the United design, and they are solid and of a darker blue than that used by plaintiff. In addition, the racing stripe is one solid tricolored bar placed above the tops of the wheelwells.

Of course, the most striking difference between the logos lies in the fact that the names of the companies contained therein bear no resemblance to each other.

United adopted this, its third logo, sometime in 1976. It was designed specifically for United by Lippincott and Margulis at a cost of between $200,000 and $300,000.[1] United uses the logo design extensively in promotion of its company, including advertising in magazines, newspapers, on TV, in the yellow pages and on billboards, and on its stationery and vehicles. The vice president of United testified that he believed that the design had acquired a "secondary meaning" in the moving market. He admitted, however, that no polls or surveys to substantiate this claim had been conducted by United since the adoption of its current design. There was no evidence of any instances of actual confusion between the designs.

The Holiday logo was designed mostly in 1978[2] by Mr. Brian Bosson, the son of Holiday's owner. He testified that the design was predicated on principles of balance and unity commonly applied in advertising. The triple-stack is an application of the psychological principle that repetition of a word or symbol engrains that word in people's minds by reinforcing the visual image. The defendant introduced into evidence two other examples of logos in which the triple-stack was used. (Ex. 8 and 9). The proof showed that Mr. Bosson had experimented with different numbers of the word "Holiday", (Ex. 24 and 28), but that because of limitations on the available width of the decal material with which the sunburst was to be applied to the truck panel, the use of the triple-stack made the most attractive design. Further, the colors used by Holiday are readily available in the commercial market. Mr. Bosson testified that he neither copied, nor intended to copy, United's design.

Even though it may be conceded that Mr. Bosson had seen the United design before completion of the final Holiday product, the evidence shows enough of an independent source of the design to preclude the inference that he copied or intended to copy it. The Court so finds as a matter of fact.

---

1. The package included the design itself as well as a standards manual and a film instructing agents as to the proper application and display of the logo.

2. Mr. Bosson testified that a survey he conducted in 1975 as a graduate student in advertising convinced him that the word "American" should be dropped from Holiday's logo design as mere surplusage. He started on a new design at that time, but didn't complete it because he was working in Nashville for another advertising company until 1978. It was not until 1978 that he began working for Holiday and completed the design.

## THE LAW

I. Lanham Act § 43(a) (15 U.S.C. § 1125(a)).

Plaintiff contends that the respective logos of the two companies are so similar as to confuse the public into believing that United and Holiday are somehow connected. Accordingly, says United, Holiday has violated § 43(a) of the Lanham Act.

■ That section provides, in pertinent part:

Any person who shall affix, apply, or annex, or use in connection with any goods or services . . . a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same . . . shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

The section is designed to remedy misrepresentation as to the origin of a product or service. *GRI Corp. v. Golden Fifty Pharmaceutical Co., Inc.*, 185 USPQ 674 (N.D.Ill. 1975). To prevail, plaintiff must show (1) a secondary meaning of the trade dress, and (2) a likelihood of confusion. *Id.; Spangler Candy Co. v. Crystal Pure Candy Co.*, 353 F.2d 641, 147 USPQ 434 (7th Cir. 1965).

■ A secondary meaning is established when the plaintiff can show "that the purchasing public has come to associate certain words, symbols, collation of colors and designs, or other advertising materials or techniques, with goods from a single source." *R J R Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1059, 203 USPQ 401 (2d Cir. 1979) (citations omitted). Since the names depicted on the logos are incontrovertibly distinct, plaintiff's contention must be that use in the moving industry of a triple-stack logo design utilizing slanted capital letters (regardless of the name conveyed) has come to be exclusively associated by the general public with United's services.[3] However, the only evidence of this is the opinion offered by plaintiff's own vice president. Although, concededly, United has spent a great deal of money in an attempt to establish such a secondary meaning, the issue is whether United has been *successful* in establishing a secondary meaning. *See Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366 (7th Cir. 1976). The evidence fails to show that United has been successful in establishing a secondary meaning. There was no testimony by consumers, and plaintiff's vice president admitted that no consumer surveys have been made since United adopted its new logo in 1976. *Cf. Union Carbide Corp., supra*, at 380–381 (design used since 1909, and two surveys as well as consumer testimony evidenced existence of secondary meaning); *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 277–279, 192 USPQ 555 (7th Cir. 1976) (survey of 500 consumers was evidence of likelihood of confusion.) In *Application of Mogen David Wine Corp.*, 372 F.2d 539, 54 CCPA 1086 (1967), the Court rejected appellant's argument, based on affidavits of consumers, that its distinctive bottle had acquired a secondary meaning. The Court said:

As far as the record shows from the advertisement and promotional material and point of sale display, affiants never saw the decanter without the neck band or label or had called to their attention the allegedly unusual configuration of the decanter. We think it reasonable therefore, as did the board, that the affiants' association of the decanter with appellant was predicated upon the impression imparted by the mark MOGEN DAVID and other descriptive material appearing thereon rather than by any distinctive characteristic of the container per se. [372 F.2d at 542].

---

**3.** The Court views the words "Van Lines" as used fairly and in good faith only to describe to potential users the services offered by the companies. Since the lettering used fits in well with the rest of the design, the Court is of the opinion that resolution of the controversy under discussion in the text will dispose of any claims based on the similarities between the lettering in those words.

Similarly, in the case at bar, the Court finds that any association of the triple-stack design with United's services is predicated not upon the design itself, but upon the clearly-displayed name "United" embodied in that design. Accordingly, the Court holds that there is no secondary meaning associated with the design in issue here.

■ The second element which must be established is that there is a likelihood of confusion between the two designs in the eyes of the public. The test of such confusion is the consumer's state of mind when he is faced with the marks individually. *Union Carbide Corp., supra*, at 382. No instances of actual confusion were cited at the trial. It is undeniable that the names of the respective companies are clearly displayed on the logos. *Cf. Time Mechanisms, Inc. v. Qonaar Corp.*, 422 F.Supp. 905, 194 USPQ 500 (D.C.N.J.1976) (evidence showed identifications without labeling) with *Application of Mogen David Wine Corp., supra* (no secondary meaning established by distinctive characteristics of container where container always labeled). As the Second Circuit has said several times, "There is hardly likelihood of confusion or palming off when the name of the [source] is clearly displayed." *Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (1972) (similarly designed stereo speakers); *American Rolex Watch Corp. v. Recoh Time Corp.*, 491 F.2d 877, 879 (1974) (Court rejected § 43(a) claim based on similarity of identifying configurations on wristwatches.) The Court holds that there is no likelihood of confusion. Accordingly, United's § 43(a) claim must fail.

## II. *Unfair Competition.*

■ United also claims that Holiday is guilty of unfair competition. "The rule is well-settled that nothing less than conduct tending to pass off one man's merchandise or business as that of another will constitute unfair competition." *Socony-Vacuum Oil Co. v. Rosen*, 108 F.2d 632, 635 (6th Cir. 1940). This amounts to fraud, requiring a showing of an intent to deceive the public as to the source of the goods or services

offered, as well as actual deception. *Socony-Vacuum , supra*, at 636; *Venetianaire Corporation of America v. A & P Import Co.*, 302 F.Supp. 156, 160–161 (S.D.N.Y. 1969).

■ The Court has found as a matter of fact that the designer of Holiday's logo neither copied nor intended to copy United's design. Further, there is no evidence that anybody has been deceived into believing that Holiday is, or is associated with, United, nor is there evidence of any likelihood of such deception in the future. What has been said above with regard to secondary meaning and likelihood of confusion disposes of plaintiff's other arguments. Accordingly, United's unfair competition claim must fail.

For the foregoing reasons, the Court is of the opinion that judgment must be entered for defendants and that this case be dismissed.

Order accordingly.